CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 30 2008

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIAM BROWN, | ) |
| | ) Civil Action No. 7:08CV00216 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) By: Hon. Glen E. Conrad |
| Defendant. | ) United States District Judge |

William Brown, a federal inmate proceeding with counsel, filed this action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680. Brown seeks to hold the United States liable for injuries that he sustained during an attack by another inmate at the United States Penitentiary in Lee County, Virginia. The United States has moved to dismiss the complaint for lack of subject matter jurisdiction on the basis of sovereign immunity. For the following reasons, the court will grant the United States' motion.

## Background

Brown is presently serving a 262-month federal sentence. He was taken into federal custody to begin serving his sentence on May 25, 1993. Since that time, he has been housed at several different facilities operated by the Federal Bureau of Prisons ("BOP"), including two federal prisons in California. Brown alleges that he was assaulted by gang members at both California prisons.

On January 30, 2007, Brown was received at the United States Penitentiary in Lee County ("USP Lee"). During his intake screening interview, Brown allegedly told the correctional officers about the incidents that occurred at the California prisons. However, because Brown did not have

any "separatees"[1] at USP Lee, and since he could not identify any inmates from whom he needed to be separated, Brown was placed in the general population.[2] On February 2, 2007, three days after he was transferred to USP Lee, Brown was assaulted by another inmate.

In the present action, Brown alleges that prison officials acted negligently by placing him in the general population at USP Lee as opposed to protective custody. Brown also alleges that his placement in the general population constituted a violation of his rights under the Eighth Amendment to the United States Constitution.

On June 5, 2008, the United States moved to dismiss Brown's complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Brown subsequently moved for an extension of time in which to respond to the United States' motion. The court granted Brown's motion, and he filed a response on July 17, 2008. The United States' motion is now ripe for review.

## Discussion

It is well established that the United States is immune from suit unless it waives its sovereign immunity. FDIC v. Meyer, 510 U.S. 471, 475 (1994). Without such a waiver, the court does not have subject mater jurisdiction over an action against the United States. Id.; see also Williams v. United States, 50 F.3d 299, 304 (1995). The court must strictly construe any waiver of sovereign immunity in favor of the sovereign. Welch v. United States, 409 F.3d 646, 650 (4th Cir.

---

[1] "When a prisoner believes other inmates pose a threat to him, he may ask to be housed separately from such inmates. Prison officials refer to these inmates as 'separatees' of the inmate seeking protection." Lewis v. Richards, 107 F.3d 549, 551 (7th Cir. 1997).

[2] In an affidavit submitted in response to the United States' motion, Brown emphasizes that he could not identify the inmates from whom he needed to be separated because he does not "know all [his] enemies" or "all the members of the Crips and Bloods gang." (Brown Aff. at para. 38).

2

2005). "For that reason, it is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists." Id. at 651. When ruling on a motion to dismiss under Rule 12(b)(1), the court may consider exhibits outside the pleadings. Williams, 50 F.3d at 304.

### I. Brown's Negligence Claim

Brown first asserts a claim for negligence under the Federal Tort Claims Act ("FTCA"). In enacting the FTCA, Congress created a limited waiver of sovereign immunity "by authorizing damages actions for injuries caused by the tortious conduct of federal employes acting within the scope of their employment, when a private person would be liable for such conduct under state law." Suter v. United States, 441 F.3d 306, 310 (4th Cir. 2006). This waiver of sovereign immunity, however, is subject to several exceptions, the "most important" of which "is the discretionary function exception." McMellon v. United States, 387 F.3d 329, 335 (4th Cir. 2004). The discretionary function exception provides that the United States is not liable for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception "marks the boundary between Congress' willingness to impose liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. S. A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984).

To determine whether conduct by a federal employee fits within the discretionary function exception, the court must first decide whether the conduct at issue "involves an element of judgment or choice." Berkovitz v. United States, 486 U.S. 531, 536 (1988); see Id. (explaining that "the discretionary function exception will not apply when a federal statute, regulation, or policy

3

specifically prescribes a course of action for an employee to follow" since "the employee has no rightful option but to adhere to the directive"). If the conduct involves such discretionary judgment, the court "must determine 'whether that judgment is of the kind that the discretionary function exception was designed to shield,' i.e., whether the challenged action is 'based on considerations of public policy.'" Suter, 441 F.3d at 311 (quoting Berkovitz, 486 U.S. at 536-537). This inquiry focuses not on the federal employee's subjective intent in exercising the discretion, "but on the nature of the actions taken and on whether they are susceptible to policy analysis." United States v. Gaubert, 499 U.S. 315, 325 (1991); see also Baum v. United States, 986 F.2d 716, 720-721 (4th Cir. 1993) (explaining that a reviewing court "is to look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy"). Furthermore, "when a statute, regulation, or agency guideline permits a government agent to exercise discretion, 'it must be presumed that the agent's acts are grounded in policy when exercising that discretion.'" Suter, 441 F.3d at 312 (quoting Gaubert, 499 U.S. at 324).

Applying these principles, the court agrees with the United States that a prison official's decision regarding whether to place an inmate in the general population falls within the discretionary function exception. First, the decision clearly "involves an element of judgment or choice." Berkovitz, 486 U.S. at 536. While the BOP regulations require prison officials to interview an inmate immediately upon his arrival, "to determine if there are non-medical reasons for housing the inmate away from the general population," 28 C.F.R. § 522.21, the regulations do not mandate a non-discretionary course of conduct, but instead leave prison officials ample room for

4

judgment. As Lieutenant Rodney Stiger explains in the affidavit submitted with the United States' motion:

> In addition to gathering intelligence by interviewing the inmate and assessing the intelligence gathered as to its relevance and credibility, the interviewer must exercise discretion in determining the significance of the information gained through the review of the inmate's Central File, [Presentence Investigation Report], SENTRY information, [Central Inmate Monitoring] Clearance and Separatee Data.
>
> At the conclusion of the intake screening process, the interviewer must use his correctional experience and judgment in balancing all of the information and factors before him in deciding whether an inmate is suitable for placement in general population.

(Stiger Aff. at 2-3).

The court further concludes that the challenged decision was "based on considerations of public policy." Berkovitz, 486 U.S. at 537. Because 28 C.F.R. § 522.21 implicitly confers discretion on prison officials in deciding whether to place an inmate in the general population, it is presumed that such decision is grounded in policy. See Suter, 441 F.3d at 312. Moreover, even without this presumption, the decision of where to house an inmate is subject to public policy considerations. As Stiger explains in his affidavit, deciding whether or not an inmate may be appropriately housed in the general population involves a number of public policy considerations, including inmate safety, prison security, and the effective use of prison resources. (Stiger Aff. at 3). See also Cohen v. United States, 151 F.3d 1338, 1344 (11th Cir. 1998) ("Deciding how to classify prisoners and choosing the [location] in which to place them are part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons.").

Accordingly, the court concludes that the discretionary function applies, and thus, that the FTCA does not waive sovereign immunity for Brown's claim that prison officials were negligent in

5

placing him in the general population. The court notes that this conclusion is consistent with the decisions of this and other courts that have applied the discretionary function exception in similar cases. See Jacocks v. Hedrick, 2006 U.S. Dist. LEXIS 74005, at *34 (W.D. Va. Sept. 29, 2006) (Turk, J.) (holding that the supervisory defendants' decisions regarding the assignment of an inmate and his attacker to the same housing unit fell within the discretionary function exception); Cohen, 151 F.3d at 1344 (holding that an inmate's claim that the Bureau of Prisons had negligently assigned his attacker to a minimum security prison "exemplifie[d] the type of case Congress must have had in mind when it enacted the discretionary function exception"); Calderon v. United States, 123 F.3d 947, 951 (7th Cir. 1997) (holding that an inmate's claim that the Bureau of Prisons acted negligently in not separating the inmate from his attacker fell within the discretionary function exception); Saunders v. United States, 502 F. Supp. 2d 493, 496 (E.D. Va. 2007) (holding that the discretionary function exception applied to an inmate's claim that the Marshals Service was negligent in placing him in an unsafe facility where he was injured in a fight with other inmates).

## II. Brown's Eighth Amendment Claim

In addition to his claim for negligence under the FTCA, Brown asserts a claim under the Eighth Amendment. Specifically, Brown alleges that prison officials exhibited deliberate indifference to his personal safety by placing him in the general population, since he advised them that he was assaulted by gang members while he was incarcerated in California.

The complaint names only the United States as a defendant, and as previously discussed, the United States is immune from suit unless it has unequivocally waived its immunity. Welch, 409 F.3d at 651. "Because the United States has not waived sovereign immunity for constitutional violations," Saunders, 502 F. Supp. 2d at 497 (citing FDIC v. Meyer, 510 U.S. at 477; Reinbold v.

Evers, 187 F.3d 348, 355 n.7 (4th Cir. 1999)), Brown's Eighth Amendment claim must also be dismissed.

## Conclusion

For the reasons stated, the court will grant the United States' motion to dismiss. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 30th day of July, 2008.

_____
United States District Judge